Garry, J.
Appeals (1) from a judgment of the County Court of *987 Tompkins County (Rowley, J.), rendered August 14, 2013, which resentenced defendant following his conviction of the crime of criminal possession of a weapon in the third degree, and (2) by permission, from an order of said court, entered October 17, 2013, which denied defendant’s motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In October 2003, Enrique Chavez died after he was shot in his apartment in the City of Ithaca, Tompkins County. Defendant was one of several individuals who were suspected of involvement, but no arrests were made at that time. Several years later, Ismail Abdur-Razzaaq and his brother, Umar Abdur-Razzaaq, implicated defendant in the shooting as part of a cooperation agreement related to pending federal charges. Defendant was thereafter charged with manslaughter in the second degree, criminally negligent homicide, criminal possession of a weapon in the third degree and tampering with physical evidence. Following a jury trial, he was acquitted of all charges except criminal possession of a weapon in the third degree. His motion to set aside the verdict pursuant to CPL 330.30 was denied, and he was sentenced as a second felony offender to the statutory maximum prison term of 3V2 to 7 years.
Thereafter, defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction, and County Court denied the motion. He appealed from the judgment of conviction and the denial of this motion. While that appeal was pending, defendant moved again pursuant to CPL 440.10 to vacate the judgment of conviction based upon newly discovered evidence. Before the second motion was decided, this Court affirmed the denial of the first CPL 440.10 motion, modified the judgment of conviction by vacating the sentence, and remitted the matter for resentencing (107 AD3d 1237 [2013], lv denied 22 NY3d 1203 [2014]). County Court then resentenced defendant to the same prison term and denied his second CPL 440.10 motion, without a hearing. Defendant now appeals from the judgment that resentenced him and, by permission, from the order denying the second CPL 440.10 motion.
Defendant contends that his sentence — the maximum permissible period of confinement for a second felony offender convicted of a class D felony (see Penal Law §§ 70.06 [3] [d]; [4] [b]; 265.02) — is harsh and excessive in view of his relatively minimal criminal history and long-standing issues with substance abuse. However, the record reveals that County Court specifically considered these factors and nonetheless concluded that the maximum term was appropriate, based upon defendant’s failure to take responsibility for the instant offense and *988 his history of repeated failures to take advantage of or comply with opportunities for substance abuse treatment. We find no abuse of the court’s discretion in this regard or any extraordinary circumstances warranting a reduction in the interest of justice (see People v Dawson, 110 AD3d 1350, 1353 [2013]; People v Ashley, 45 AD3d 987, 989 [2007], lv denied 10 NY3d 761 [2008]; People v Abbott, 275 AD2d 481, 484 [2000], lv denied 96 NY2d 731 [2001]).
Defendant next contends that County Court erred in denying his second motion pursuant to CPL 440.10 to vacate the judgment of conviction. Contrary to defendant’s contention, the bench decision in which the court set forth the reasons for denying the motion, as amplified by the court’s comments during argument on the motion, was sufficient to comply with the statutory requirement to “set forth on the record [the court’s] findings of fact, its conclusions of law and the reasons for its determination” (CPL 440.30 [7]; see People v Watkins, 79 AD3d 1648, 1648-1649 [2010], lv denied 16 NY3d 800 [2011]). Further, upon review, we agree with County Court that two of the three issues raised in the motion had been raised in defendant’s first CPL 440.10 motion. As these issues were considered and resolved upon the prior appeal, they are not now properly before us (see CPL 440.10 [3] [b]; People v Glinton, 74 NY2d 779, 780 [1989]; People v De Oliveira, 223 AD2d 766, 769 [1996], lv denied 88 NY2d 1020 [1996]).
As for the third issue, defendant relies upon what he contends is newly discovered evidence that creates a probability that the trial verdict would have been more favorable to him if the evidence had been received at trial (see CPL 440.10 [1] [g]). Defendant submitted affidavits from his mother and a private investigator describing statements allegedly made to them after the trial by Jameel Melton, who shared an apartment with Chavez before the shooting. After Chavez was shot in this apartment, police found a holster and ammunition in a purse in Melton’s bedroom closet; they also located a user’s manual for a .380 caliber handgun in a pair of jeans on the bed in Melton’s room, and Melton’s fingerprints were identified on this document. Police later found a .380 caliber handgun and loaded magazine on the bank of a nearby creek, and forensic testing revealed that the bullet that struck Chavez had been fired from this weapon. None of this physical evidence was ever linked with defendant’s fingerprints or DNA. Shortly after the shooting, Melton told police that he was not in Ithaca at the time of the incident, having taken a bus to New York City earlier that day. He initially denied any knowledge of a weapon, but later *989 acknowledged that he had found a gun in his closet and had handled it before leaving for New York City. Melton did not testify at trial. Ismail Abdur-Razzaaq testified that he gave a .380 caliber gun to defendant, both Abdur-Razzaaq brothers testified that defendant later made incriminating statements, and Diego Bush testified that he saw defendant playfully wrestling with Chavez and poking him with such a weapon just before it went off (see 107 AD3d at 1238-1239).
In her affidavit, defendant’s mother averred that Melton— then in jail awaiting determination of unrelated criminal charges — told her that he owned the gun that had been used to shoot Chavez, that defendant had neither possession nor knowledge of this gun, and that Melton would be willing to testify to this effect if his attorney approved; she also said that Melton expressed concern that such an admission could result in additional charges against him. Defendant’s private investigator stated that, during a meeting with Melton and Melton’s counsel in jail, Melton told him that defendant “did not possess and had nothing to do with the gun” and that Melton was willing to testify on this subject. The People responded that they had attempted to investigate these claims but had been told by Melton’s counsel that he was unwilling to speak with the People and no longer wanted anything to do with defendant’s case. In denying the motion, County Court expressed its belief that the hearsay affidavits of the private investigator and defendant’s mother were an insufficient basis for defendant’s motion, in view of the fact that Melton himself had not supplied an affidavit and was apparently unwilling to testify. We disagree.
“[A] defendant has a fundamental right to offer into evidence the admission of another to the crime with which he or she is charged” (People v Page, 115 AD3d 1067, 1069 [2014], lv dismissed 23 NY3d 966 [2014]). “Depriving a defendant of the opportunity to offer into evidence another person’s admission to the crime with which he or she has been charged, even though that admission may only be offered as a hearsay statement, may deny a defendant his or her fundamental right to present a defense” (People v Gibian, 76 AD3d 583, 585 [2010], lv denied 15 NY3d 920 [2010] [citations omitted]; see Chambers v Mississippi, 410 US 284, 302 [1973]). The People’s claims regarding Melton’s unwillingness to testify were themselves hearsay, and simply created issues of fact as to whether he was available and, if not, whether his posttrial statements were admissible as declarations against his penal interest (see People v McFarland, 108 AD3d 1121, 1122-1123 [2013]). A statement is admissible under this hearsay exception if (1) the declarant is unavailable because *990 of death, absence or a refusal to testify on constitutional grounds, (2) the declarant knew when making the declaration that it was contrary to his or her penal interest, (3) he or she had competent knowledge of the facts, and (4) other independent evidence supports the reliability and trustworthiness of the declaration (see People v Brensic, 70 NY2d 9, 15 [1987]; People v Martin, 8 AD3d 883, 886 [2004], lv denied 3 NY3d 677 [2004]). Where, as here, the statement at issue tends to exculpate a criminal defendant, a more lenient standard of reliability is applied than to inculpatory statements; an exculpatory declaration is admissible if competent independent evidence “establishes a reasonable possibility that the statement might be true” (People v Settles, 46 NY2d 154, 169-170 [1978]; accord People v McFarland, 108 AD3d at 1122; People v Deacon, 96 AD3d 965, 968 [2012], appeal dismissed 20 NY3d 1046 [2013]).
Here, Melton was the only person linked by forensic evidence to the weapon that defendant was convicted of possessing. Moreover, the fact that Melton made one of the hearsay statements in the presence of his counsel is a compelling consideration in assessing whether it is reasonably possible that it was truthful. In view of these circumstances and the relatively minimal evidence supporting defendant’s conviction, a hearing is necessary to promote justice, and the CPL 440.10 motion should not have been summarily denied (see People v Page, 115 AD3d at 1069; People v McFarland, 108 AD3d at 1122-1123).
Stein, J.P, McCarthy, Lynch and Devine, JJ., concur.
Ordered that the judgment is affirmed. Ordered that the order is reversed, on the law, and matter remitted to the County Court of Tompkins County for further proceedings not inconsistent with this Court’s decision.