People v Lorenzo (2024 NY Slip Op 04681)

People v Lorenzo

2024 NY Slip Op 04681

Decided on September 27, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, OGDEN, GREENWOOD, AND HANNAH, JJ.

596 KA 23-01557

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
BRIAN SCOTT LORENZO AND JAMES PUGH, DEFENDANTS-RESPONDENTS. 

MICHAEL J. KEANE, ACTING DISTRICT ATTORNEY, BUFFALO (HARMONY A. HEALY OF COUNSEL), FOR APPELLANT. 
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP, NEW YORK CITY (ILANN M. MAAZEL OF COUNSEL), AND ZMO LAW PLLC, FOR DEFENDANTS-RESPONDENTS.

 Appeal from an order of the Supreme Court, Erie County (Paul Wojtaszek, J.), entered August 23, 2023. The order granted the motions of defendants insofar as they sought to vacate judgments of conviction and order a new trial. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed.
Memorandum: Following a joint trial in 1994, defendants, Brian Scott Lorenzo and James Pugh, were convicted of murder in the second degree (Penal Law § 125.25 [3]) and burglary in the first degree
(§ 140.30 [2]), and Lorenzo was also convicted of an additional count of murder in the second degree (§ 125.25 [1]). The People now appeal from an order granting defendants' motions pursuant to CPL 440.10 (1) (g), (g-1), and (h) to vacate the judgments on the grounds of newly discovered evidence and a Brady violation. We affirm.
Defendants' convictions stemmed from the murder of a woman in her home the afternoon of February 17, 1993. The victim was stabbed multiple times and strangled to death with a necktie. The evidence against defendants at the joint trial consisted of testimony from friends and acquaintances who testified that defendants admitted their involvement in the crime, and the testimony of the victim's husband that a 1921 Morgan S silver dollar recovered from Lorenzo belonged to him. At the hearing upon defendants' motions to vacate, evidence was introduced that forensic DNA testing conducted after the conviction of defendants excluded them as contributors to any DNA found on various items inside the victim's residence, including the knife used to stab the victim, the handcuffs used to bind her, the necktie used to strangle her, her clothing, and her fingernail scrapings. There was also testimony that the prosecutor did not turn over to the defense his handwritten note stating that the father of the victim's husband was unable to identify the recovered silver dollar as the one he had given to his son. Although not a ground for Supreme Court's granting of the motions, we also note that there was considerable evidence at the hearing that the lead investigator had pressured many witnesses to incriminate and testify against defendants.
It is well settled that on a motion to vacate a judgment of conviction based on newly discovered evidence, "the movant must establish, inter alia, that there is newly discovered evidence: (1) which will probably change the result if a new trial is granted; (2) which was discovered since the trial; (3) which could not have been discovered prior to trial; (4) which is material; (5) which is not cumulative; and[ ] (6) which does not merely impeach or contradict the record evidence" (People v White, 125 AD3d 1372, 1373 [4th Dept 2015] [internal quotation marks omitted]). Where forensic DNA testing has been performed since entry of the judgment, [*2]vacatur is warranted where the court determines "that there exists a reasonable probability that the verdict would have been more favorable to the defendant" (CPL 440.10 [1] [g-1] [2]). We conclude that the court did not abuse its discretion in determining that the newly discovered DNA evidence will probably change the result if a new trial is granted (see White, 125 AD3d at 1374) or that there existed a reasonable probability that the verdict would have been more favorable to defendants had the DNA evidence been admitted at trial (see People v Robinson, 214 AD3d 904, 906 [2d Dept 2023], lv denied 40 NY3d 936 [2023]; People v Hicks, 114 AD3d 599, 602 [1st Dept 2014]).
The People contend that the new DNA testing results were merely cumulative of the evidence at trial because defendants were never connected to the crime scene by any scientific evidence. We reject that contention. "[T]estimony is cumulative when it would not have contradicted or added to the existing testimony" (People v Garcia, 192 AD3d 1463, 1465 [4th Dept 2021] [internal quotation marks omitted]; see People v Smith, 33 NY3d 454, 461 [2019]). We conclude that the trial stipulation that the scrapings found beneath the victim's fingernails contained only her own blood is not the equivalent of evidence conclusively eliminating defendants as contributors to mixtures of DNA found on the knife and necktie used in the victim's murder, as well as numerous other items that were tested. Although we agree with the People that the DNA evidence does not conclusively exclude defendants as participants in the crime inasmuch as they may have worn gloves during the commission of the crime, the discovery of unidentified DNA on several items that were tested allows for the possibility that another unidentified person committed the crime and could raise reasonable doubt among the jury (see White, 125 AD3d at 1373-1374; Hicks, 114 AD3d at 602-603).
With respect to the Brady claim, defendants were required to show "that (1) the evidence is favorable to [them] because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v McGhee, 36 NY3d 1063, 1064-1065 [2021] [internal quotation marks omitted]). Where, as here, the defense did not specifically request the information, "the test of materiality is whether there is a reasonable probability that had it been disclosed to the defense, the result would have been different" (People v Garrett, 23 NY3d 878, 891 [2014], rearg denied 25 NY3d 1215 [2015] [internal quotation marks omitted]; see People v Ulett, 33 NY3d 512, 519 [2019]). We conclude that the court did not abuse its discretion in granting the motions on this ground (see generally People v Samandarov, 13 NY3d 433, 436 [2009]). The People concede that the information that the father of the victim's husband was unable to identify the coin constituted Brady material, and contrary to their contention, defendants met their burden of establishing that the information was not turned over to them. We reject the People's further contention that there was no reasonable probability that disclosing the evidence would have changed the verdict (see generally People v Negron, 26 NY3d 262, 270 [2015]). The testimony of the victim's husband that the coin recovered from Lorenzo belonged to him was a key piece of evidence at trial (see People v Lorenzo, 224 AD2d 924, 924 [4th Dept 1996], lv denied 88 NY2d 967 [1996]), as the People concede. Defendants established that " 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict' " (Ulett, 33 NY3d at 520).
We have considered the People's remaining contentions and conclude that they are without merit.
Entered: September 27, 2024
Ann Dillon Flynn
Clerk of the Court